UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA LEWIS,

    Plaintiff,

v.                                                                            Hon. Sally J. Berens

COMMISSIONER OF                              Case No. 1:23-cv-150
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed protective applications for DIB and SSI on July 30, 2019, alleging that she became disabled as of May 12, 2019, due to a left shoulder injury, tear in the muscle under her clavicle, mid-to-lower back problems, nerve pain in both legs, neck problems/cervical lordosis, nerve pain in both arms/hands, fibromyalgia, frequent headaches, depression, and anxiety. (PageID.90–91, 100–01, 335–38, 339–45.) Plaintiff was age 42 at the time of her alleged onset date and age 43 when she filed her applications. (PageID.100.) She had completed two years of

college and had past work as a nurse, a press operator, an industrial truck operator, and a color checker. (PageID.64, 374.) Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).

ALJ Cynthia S. Harmon conducted an online video hearing on February 8, 2022, and received testimony from Plaintiff and Michelle Ross, an impartial vocational expert (VE). (PageID.4096–4135.) On April 5, 2022, the ALJ issued a written decision finding that Plaintiff was not disabled from her alleged onset date through the date of the decision. (PageID.46–66.) The Appeals Council denied Plaintiff's request for review on January 3, 2023 (PageID.26–28), making ALJ Harmon's April 5, 2022 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on February 8, 2023.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his or her residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff met the insured status requirements of the Act through December 31, 2024, and had not engaged in substantial gainful activity since her alleged onset date of May 12, 2019, the ALJ found that Plaintiff suffered from severe impairments of fibromyalgia; degenerative disc disease of the lumbar spine status post fusion surgery; bilateral rotator cuff tendonitis; Factor V Leiden deficiency with history of deep vein thrombosis; gastroparesis; headaches; obstructive sleep apnea; and obesity. (PageID.49.) The ALJ further found that several other impairments, including Plaintiff's anxiety and depression, were non-severe as they did not cause more than minimal limitations in her ability to perform work activities. (PageID.49–52.)

---

capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ considered Listings 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root), 1.16 (Lumbar Spinal Stenosis Resulting in Compromise of the Cauda Equina), 1.18 (Abnormality of a Major Joint in Any Extremity), 3.00 (Respiratory Disorders), 4.11 (Chronic Venous Insufficiency), 5.06 (Inflammatory Bowel Disease), 11.00 (Neurological Disorders), and 14.09 (Inflammatory Arthritis), but found that Plaintiff's impairments failed to satisfy the requirements to meet any of them. (PageID.52–55.)

The ALJ then determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [S]he can stand and/or walk up to four hours and can sit for up to six hours in an eight-hour day. Claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and may never climb ladders, ropes, or scaffolds. Claimant may occasionally reach overhead with the bilateral upper extremities. Claimant is limited to work in environments with no more than moderate noise levels as defined by the DOT; must avoid concentrated exposure to extreme cold, heat, and humidity; must avoid concentrated exposure to pulmonary irritants such as fumes, dusts, odors, or gases; and must avoid vibration. Claimant is limited to simple, routine tasks not involving complex decision-making or judgment.

(PageID.55–56.)

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work (PageID.64), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of inspector, folder, and light assembler, approximately 294,000 of which existed in the national economy. (PageID.65.) This represents a significant number of jobs. *See,*

5

*e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (noting that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ thus concluded that Plaintiff had not been disabled during the period at issue.

## Discussion

Plaintiff raises three errors on appeal: (1) the ALJ erred as a matter of law by failing to evaluate whether Plaintiff's migraine headaches medically equaled listing 11.02B; (2) the ALJ erred as a matter of law by failing to properly evaluate Plaintiff's subjective symptoms of fibromyalgia in accordance with SSR 12-2p and 16-3p; and (3) the ALJ erred as a matter of law by failing to properly evaluate the supportability and consistency of the medical opinion of Kristin Kenney, PA-C in accordance with 20 C.F.R. §§ 404.1520c and 416.920c.

**I.    Evaluation of Plaintiff's Headaches**

Plaintiff contends that the ALJ erred at step three of her analysis by failing to determine whether her headache impairment medically equaled Listing 11.02B. Plaintiff contends that because primary headache disorders are not included in the Listing of Impairments, the ALJ should have determined whether her headache impairment medically equaled Listing 11.02B. Instead, Plaintiff notes, the ALJ determined that her headaches failed to meet any listing in section 11.00. She contends that the ALJ's failure to properly evaluate equivalency is not harmless because the record contains sufficient evidence to establish medical equivalency. (ECF No. 13 at PageID.4159–60.)

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An impairment that meets only some of the requirements of a listing does not

6

qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). "For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (italics in original).

As the ALJ acknowledged, there is no specific listing for primary headache disorder. The Social Security Administration has issued specific guidance for headache disorders. *See* SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). In particular, SSR 19-4p provides:

> If a person's primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, we assess the person's residual functional capacity (RFC). We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC. The RFC is the most a person can do despite his or her limitation(s).
>
> We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.

*Id.* at *7–8. An ALJ evaluates a headache disorder at step three by determining whether, "alone or in combination with another impairment(s), [it] medically equals a listing." *Id.* at *7. The ruling notes that Listing 11.02 for epilepsy is the most closely analogous listed impairment for headache disorders, explaining that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph

7

B or D for dyscognitive seizures)." *Id.* The ruling also sets forth the proper analysis under paragraph B:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* (citing 20 C.F.R. Part 404, Subpt. P, App. § 11.02 Mar. 14, 2018)).

To satisfy paragraph B of listing 11.02, a claimant must present evidence of "[d]yscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.* Dyscognitive seizures are defined as the "alteration of consciousness without convulsions or loss of muscle control." 20 C.F.R. Pt 404, Subpt. P, App'x 1, § 11.00H(1)(b). The seizure activity may include "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) . . . ." *Id.*

Defendant's argument pertaining to SSR 17-2p lacks merit. This ruling provides the analytical process for step three medical equivalence determinations. SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). Regarding articulation requirements, the ruling states that if an ALJ believes that the medical evidence of record "does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.* at *4. "Generally, a statement that the

individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* The ALJ's discussion at later points in his or her decision of reasons why the claimant is or is not disabled will suffice to provide the ALJ's rationale for the step three finding. *Id.*

This policy is inapplicable here because the ALJ did not consider medical equivalence regarding Listing 11.02B; rather, she found that Plaintiff's headaches failed to *meet* the listing. (PageID.55.) Thus, there is no indication that the ALJ considered the criteria set forth in SSR 19-4p for determining medical equivalence with Listing 11.02B. *See Charvat v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-02121, 2023 WL 7473760, at *15–18 (N.D. Ohio Oct. 25, 2023), *report and recommendation adopted*, 2023 WL 7461844 (N.D. Ohio Nov. 9, 2023) (concluding that the ALJ's failure to consider whether the plaintiff's migraine headaches medically equaled Listing 11.02B by applying the criteria set forth in SSR 19-4p warranted remand because the evidence could have supported an equivalence finding).

Although the ALJ failed to consider medical equivalence, the error was, at most, harmless given the lack of evidence supporting an equivalency finding. To begin, the record does not contain a "detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena." SSR 19-4p, 2019 WL 4169635, at *7; *see Kazimer v. Comm'r of Soc. Sec.*, No. 2:22-cv-11268, 2023 WL 2950612, at *13 (E.D. Mich. Jan. 18, 2023), *report and recommendation adopted*, 2023 WL 2496717 (E.D. Mich. Mar. 14, 2023) (holding that even though the ALJ misstated an element for an equivalency finding under Listing 11.02B, the ALJ properly found no equivalence because, among other reasons, the record lacked "a detailed description of typical migraine pattern including all associated phenomena"). The medical evidence Plaintiff cites to support her contention that her headache symptoms medically

equal the alteration of consciousness and other symptoms of dyscognitive seizures does not support such a conclusion because Plaintiff fails to connect the cited evidence to her headaches. For example, the July and November 2020 clinical evaluations by neurologist Mary McPhail-Ciufo, D.O., both concerned her complaints about issues with cognition, not headaches. (PageID.1164–77, 1193–1205.) Plaintiff denied headaches at both visits (PageID.1164, 1194), and the doctor's notes fail to mention headaches as an active problem or as part of Plaintiff's past medical history. (PageID.1165–66, 1194–95.) The doctor tied Plaintiff's cognitive complaints to untreated obstructive sleep apnea and noted that her condition was likely worsened by her recent increased dose of Norco. (PageID.1164, 1193–94.) Likewise, Plaintiff fails to explain how the August 7, 2020 electroencephalogram study showing focal slowing over the left anterior–mid temporal region, or the positive rheumatological labs of unclear significance, relate to her headache symptoms. (PageID.1188, 3226.) On the other hand, Plaintiff's treatment records consistently show that she was alert and oriented, suggesting that she did not experience listing-level headache symptoms. (PageID.1153, 3199, 3380, 4009, 4036–37.) *See Broderick v. Kijakazi*, No. 2:21-cv-12480, 2022 WL 19518407, at *15 (E.D. Mich. July 12, 2022), *report and recommendation adopted*, 2023 WL 2711628 (E.D. Mich. Mar. 30, 2023) (observing that treatment records indicating that the claimant was alert and fully oriented and failing to report that the claimant experienced disability-level headaches indicated that the claimant did not regularly experience the symptoms set forth in SSR 19-4p). Finally, Plaintiff fails to demonstrate that she experienced migraines at the severity of dyscognitive seizures at the frequency required by Listing 11.02B—once per week for three months. In fact, in a treatment note from February 2022 not pertaining to headaches, Plaintiff reported experiencing "chronic headaches with superimposed migraines that occur a couple of times per month." (PageID.4034–35.) In sum,

10

where, as here, "the record does not support the finding that the claimant can meet all of the elements required for medically equaling a listed impairment, the failure to discuss equivalency under the listing, or even the listing itself, does not justify a remand." *Kazimer*, 2023 WL 2950612, at *13 (citing *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 415–16 (6th Cir. 2020)).

Accordingly, this claim of error is denied.

## II.   Evaluation of Subjective Symptoms

Plaintiff next contends that the ALJ failed to properly evaluate her subjective symptoms, particularly her fibromyalgia symptoms, in accordance with SSA policy. An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). An ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) but "is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters*, 127 F.3d at 531. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* However, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). SSR 12-2p provides guidance for evaluating a claimant's subjective statements concerning fibromyalgia symptoms. *See Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 399–400 (6th Cir. 2016).

Plaintiff first takes issue with the ALJ's statement that, "[a]lthough [Plaintiff] did present with multiple tender points, this was thought related to myofascial pain syndrome." (PageID.61.) She notes that the ALJ failed to cite any record evidence to support this statement and asserts that the ALJ was simply substituting her own lay opinion for that of a medical professional because none of Plaintiff's providers excluded fibromyalgia as a basis for their findings of multiple tender points. (ECF No. 13 at PageID.4167.) This argument lacks merit because it mischaracterizes the ALJ's statement. As Plaintiff concedes, the record contains findings attributing Plaintiff's pain to myofascial pain syndrome. (*Id.*; PageID.3226 ("Most symptoms asre (sic) likely due to myofascial pain syndrome as discussed below.").) Rather than "playing doctor," the ALJ was merely citing a rheumatologist's finding in the record. Moreover, the ALJ properly considered Plaintiff's fibromyalgia throughout her decision, both in her step-two analysis and in her RFC finding and analysis, which accounted for Plaintiff's fibromyalgia by limiting her to a reduced range of light work with postural limitations and reduced ability to stand or walk for four hours in an eight-hour workday. (PageID.49, 55, 62, 63–64.)

Plaintiff also contends that the ALJ's observation that her providers encouraged her to exercise and to avoid narcotics for her fibromyalgia to support the RFC finding that Plaintiff

12

could stand or walk for four hours each day ignores that the recommendation was for 30 minutes of exercise per day, which would not translate to an ability to stand or walk for four hours each day. She further contends that in discounting Plaintiff's subjective complaints, the ALJ ignored multiple fibromyalgia tender point findings and Plaintiff's consistent complaints of fatigue. (ECF No. 13 at PageID.4167–68.)

Contrary to Plaintiff's argument, however, the ALJ did not overlook the fibromyalgia tender point findings or Plaintiff's reports of fatigue, as she discussed this evidence throughout her RFC explanation. (PageID.56–61.) Moreover, the ALJ did not consider the exercise recommendation out of context, but instead properly considered the conservative nature of the recommendation in finding Plaintiff's subjective symptoms of fibromyalgia not fully consistent with the evidence. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016) (noting that the plaintiff's "routine and/or conservative treatment for the allegedly disabling impairments" was a proper basis to discount his allegations of pain). The ALJ's evaluation of Plaintiff's subjective symptoms was well supported by evidence in the record. Plaintiff's disagreement with the ALJ's interpretation of the evidence and her rationale does not warrant remand. *See Steed v. Colvin*, No. 4:15-cv-1269, 2016 WL 4479485, at *10 (N. D. Ohio Aug. 25, 2016) ("While Steed may disagree with the ALJ's explanation or her interpretation of the evidence of record, her disagreement with the ALJ's rationale does not provide a basis for remand."). In short, Plaintiff fails to demonstrate that she is more limited than the ALJ found.

This claim of error thus lacks merit.

**III.     Evaluation of Ms. Kenny's Opinion**

Last, Plaintiff contends that the ALJ erred in evaluating the opinion of Plaintiff's mental health provider, Kristin Kenny, PA-C. In articulating Plaintiff's RFC, the ALJ evaluated the opinion evidence pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the

ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5) and 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. *See* 20 C.F.R. §§ 404.l520c(b)(2) and (3) and 416.920c(b)(2) and (3). The regulations explain "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

The ALJ is to conduct this analysis with regard to all medical source opinions and prior administrative findings but is not required to give controlling weight to an opinion from any particular source. The former rule, well-known as "the treating physician rule[,] no longer applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022). "'Although the new standards are less stringent in their requirements for the treatment of medical

14

opinions, they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

Ms. Kenny completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on January 29, 2021. (PageID.3218–20.) The ALJ evaluated this opinion as follows:

> In January 2021, psychiatric provider Kristin Kenny, P.A.-C., provided a mental functional capacity assessment of the claimant. Ms. Kenny opined that claimant experienced moderate to marked limitations in understanding, remembering, and applying information; and mild to moderate limitations in interacting with others. Ms. Kenny opined that claimant experienced "marked problems with organizing time, tasks, and thoughts" (Ex. 25F). I find this opinion largely unpersuasive in that it is mostly inconsistent with the medical evidence and the record in its entirety, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living (Exs. 1E; 29F/4; 36F/5; 19F/2; Hearing Testimony). The extent of limitations noted by Ms. Kenny is unsupported in most regards given mild mental status examination findings and only recent mental health treatment supporting no more than minimal functional limitations overall.

(PageID.63.)

Although the ALJ found the opinion inconsistent with the balance of the record and Plaintiff's activities of daily living and unsupported by mental status findings and Plaintiff's only recently-initiated mental health treatment, Plaintiff contends that the ALJ failed to properly evaluate both the consistency and supportability factors. First, as to consistency, she points out that, of the three treatment notes the ALJ cited as containing generally unremarkable mental status findings, only two actually contained mental status findings (PageID.1153 and 3380), and none of the treatment notes pertains to her mental impairments. Nonetheless, it remains true that two of the records the ALJ cited contained normal mental status findings. Moreover, Plaintiff

15

fails to consider the ALJ's step-two discussion and finding that Plaintiff's mental impairments were non-severe, which she supported with citation to additional treatment notes reflecting generally normal mental status findings. (PageID.50 (citing PageID.3199 and 4036–37).) In addition, Plaintiff raises no issue with the ALJ's permissible finding that Ms. Kenny's opined moderate and marked limitations were inconsistent with Plaintiff's reported activities of daily living. *See Hrab v. Comm'r of Soc. Sec.*, No. 1:20-CV-637, 2022 WL 681892, at *6 (W.D. Mich. Mar. 8, 2022) (ALJ properly considered the claimant's daily activities in evaluating the persuasiveness of a medical opinion).

Plaintiff also contends that, while the ALJ found Ms. Kenny's opinions unsupported, she failed to articulate the basis for this conclusion. More specially, Plaintiff argues that the ALJ failed to cite Ms. Kenny's own treatment notes in the paragraph evaluating her opinion or anywhere at all in her RFC discussion. As with Plaintiff's consistency argument, however, her supportability argument ignores the ALJ's step two discussion, which cited many of Ms. Kenny's treatment notes containing normal mental status examination findings. (PageID.50–51 (citing PageID.1345, 1517, 1846–47, 3786, and 3930.) Although these findings do not appear in the paragraph discussing Ms. Kenny's opinion or even in the RFC discussion, it is well established that an ALJ's decision must be read as a whole. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review"). Reading the ALJ's discussion of the opinion in the context of the decision as a whole, the Court concludes that the ALJ sufficiently articulated her reasons for finding Ms. Kenny's opined limitations unsupported and thus unpersuasive.

This claim of error thus lacks merit.

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision applies the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.

Dated: December 4, 2023                  /s/ Sally J. Berens
                                                               SALLY J. BERENS
                                                               U.S. Magistrate Judge